# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-0032 |
| VERSUS | JUDGE ROBERT G. JAMES |
| CATHRYN M. WINN | MAG. JUDGE KATHLEEN KAY |

## MEMORANDUM RULING

Before the Court is an appeal filed by the Defendant, Cathryn M. Winn ("Winn"). [Doc. No. 16]. After a bench trial before Magistrate Judge Kathleen Kay on January 8, 2018, Winn was convicted of three traffic violations: overtaking and passing a school bus (La. Rev. Stat. 32:80), reckless operation of a vehicle (La. Rev. Stat. 14:99), and hit-and-run driving (La. Rev. Stat. 14:100). [Doc. No. 15]. Winn appeals her conviction. After careful consideration of the Defendant's appellate brief, the record, and the applicable law before the Court, Magistrate Judge Kay's decision is **AFFIRMED IN PART** and **REVERSED IN PART**.

## BACKGROUND INFORMATION

On the morning of September 13, 2017, Winn was driving from her home on Fort Polk to Pickering High School in Leesville, Louisiana, where she is a teacher. In her vehicle at the time were her daughters and her neighbor's children. As Winn was exiting her Fort Polk housing development, her neighbor's daughter stated that she had left her gym shoes and she needed them for school. Winn turned her vehicle around and began traveling back toward her home on Kalina Street. While traveling south on Kalina Street, Winn noticed a school bus approaching from the opposite direction. Winn testified at trial, describing her next actions as follows:

> I saw the bus and I saw the kids and I was, like, okay that bus is going to stop. So I stopped. I paused for a second and then it was like slow motion. And I thought about Julianna and Nathan getting to school on time. And I thought about the fact that, if that had been a place where there was a median in the middle of

> the road, that I wouldn't have to stop. And then I realized that that lot was there, and I had just been on that lot the previous weekend walking my dog so I was very familiar with the terrain on that hill. So in my split second of my flash anxiety attack slash hot flash, I just took off and went to the right. I didn't go forward. The terrain was hilly. There's no way I could have been speeding. And I thought they had some kind of video camera on the bus and I was, like, please bring it because you will see I wasn't speeding and I wasn't anywhere near the bus.
>
> So I left the roadway. I went way up on the top of the hill as far away from the bus as I could. The children were far, far away. I did not enter the road until right in front of the driveway of the Stone residence, that first house at the end of the lot; and the bus was far gone by then. And so that was the whole school bus incident.

[Doc. No. 22, Trial Transcript at 77-78].

Also present that morning was First Sergeant Ericka Perez ("Perez"), who was standing in her driveway at 137 Kalina Street. *Id.* at 9-11. Perez testified that the school bus was stopped in front of her house with red flashing lights and stop signs extended because the children were loading onto the bus. *Id.* at 11, 15-16. Perez was waiting for the bus to finish picking up the children so that she could leave her house. While waiting, Perez noticed Winn's white SUV approach from the north, jump the curb onto a grassy lot and bypass the bus while the warning lights were out. *Id.* at 16. Perez also testified that, in her opinion, Winn was speeding because the neighborhood has a posted maximum speed of 15 mph. *Id.* at 18.

After driving off the road to avoid stopping for the bus, Winn continued on to her house. *Id.* at 88. She went inside to rinse her mouth with mouthwash because she had vomited during the drive due to stress, and Julianna went into her house next door to grab her shoes. *Id.* Winn testified that when she got back into her car she thought "holy smoke, you know, I just went over the hill." *Id.* As a result, Winn stated that she was trying to drive the speed limit on her way back out of the neighborhood when she noticed her neighbor, Amanda Marshall. *Id.* Winn stopped her vehicle to allow Amanda Marshall to cross the street, and when she proceeded she saw a

group of people standing in the road. *Id.* As she approached, she saw Perez step into the road. *Id.* Winn then described the following events:

> So I turned my wheel a little and she [Perez] started to approach some more in my direction and get more in my path. And I thought, well, she has a look on her face that says she's stopping my car and either I am or am not. So in that split second I decided I'm not stopping this car. I'm protecting these kids in my car. I didn't like her stance. I didn't like her face. I was scared. So I revved my engine—because she stepped this way, I revved my engine to let her know I don't intend to stop, because if I were going to stop I would have stopped. So I revved my engine and then I immediately tried to veer off to the left, and she moved into my path another time. And so as I get close to her I just whip it to the left really hard, and she reaches her hands up and she lunges down on the top of my vehicle and thuds my car so hard. And that is why my daughter was here today, because she was in the front seat too. And so after that I was like, "oh, my God. She just hit my car." And then I looked in my rearview mirror. She was standing like this with her hands up, and I just kept going.

*Id.* at 88-89. Winn further explained that she did not stop her car because Perez took a domineering stance, and she was scared and concerned for the children in her car. *Id.* at 90.

Perez testified that she decided to confront Winn because she was speeding and went around the bus while the children were present, and because children play on the grassy lot all the time. *Id.* at 19. Perez testified that she moved into the middle of the road and tried to flag Winn down so she could talk to her, but when the vehicle was around 100 feet from her she saw the vehicle stop and heard a revving of the engine. *Id.* at 20. Perez said the vehicle then continued on the road towards her and at the last moment it jumped the curb, grazing her with the passenger side of the vehicle. *Id.* at 20-21. Perez testified that there was sufficient contact with the vehicle to leave residue or dust on her uniform, but she was not injured. *Id.* at 21, 33. Perez testified that it is possible that she slapped her hand on Winn's vehicle when she was grazed. *Id.* at 33. Perez testified that Winn did not stop, and continued to drive north on Kalina Street. *Id.* at 21.

Perez filed a report with the Fort Polk Emergency Services. *Id.* at 38. Officer Terry Niette ("Officer Niette") investigated the incident, and issued Winn citations for overtaking a

3

school bus (La. Rev. Stat. 32:80), reckless operation of a vehicle (La. Rev. Stat. 14:99), and hit-and-run driving (La. Rev. Stat. 14:100). [Doc. Nos. 1, 3, and 4]. After a bench trial on the charges, Magistrate Judge Kay found Winn to be guilty of all three charges and ordered a monetary penalty totaling $870.00. [Doc. No. 15]. Winn filed a timely notice of appeal. [Doc. No. 16].

I. **Standard of Review**

This Court will review Winn's conviction for sufficiency of the evidence. On appeal from a magistrate judge's judgment of conviction, "the defendant is not entitled to a trial de novo by a district judge." Fed. R. Crim. P. 58(g)(2)(D). Rather, the scope of the defendant's appeal "is the same as in an appeal to the court of appeals from a judgment entered by a district judge." *Id.* Under this standard of review, a district court will affirm a magistrate judge's findings if they were supported by substantial evidence. *See United States v. Lee*, 217 F.3d 284, 288 (5th Cir. 2000).

The finding of guilt after a bench trial is reviewed to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," with the evidence and inferences drawn therefrom viewed "in the light most favorable to the prosecution." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789 (1979). In so doing, the Court must "accept all credibility choices that tend to support the verdict." *United States v. Stevenson*, 126 F.3d 662, 664 (5th Cir. 1997). "In all, this Court's inquiry is limited to whether the verdict was reasonable, not whether [it] believe[s] it to be correct." *United States v. Alaniz*, 726 F.3d 586, 601 (5th Cir. 2013). "This inquiry is highly deferential to the verdict." *Id.* This Court cannot consider new evidence furnished for the first time on appeal and may not consider facts which were not before the magistrate court at the time of its ruling. *See United States v.*

*Alvarez*, 61 F. App'x. 120, *1 (5th Cir. 2003) (citing *Theriot v. Parish of Jefferson*, 185 F.3d 477, 491 n. 26 (5th Cir. 1999)).[1]

The court reviews decisions to admit or exclude evidence for abuse of discretion. *United States v. Phillips*, 219 F.3d 404, 409 (5th Cir. 2000). If abuse of discretion is found, the harmless error doctrine is applied. *See id*. The error is reviewed not in insolation, but in relation to the entire proceedings to determine whether the inadmissible evidence contributed to the verdict. *See United States v. Skipper*, 74 F.3d 608, 612 (5th Cir. 1996). Evidentiary rulings are to be affirmed unless the abuse of discretion affected a substantial right of the complaining party. *See Phillips*, 219 F.3d at 409.

The contemporaneous objection rule requires a defendant to lodge an objection at the time evidence is offered to preserve the issue on appeal. *See United States v. Vontsteen*, 950 F.2d 1086, 1089-90 (5th Cir. 1992). The admission of evidence without objection is reviewed for plain error. *See* Fed. R. Evid. 103(e); *United States v. Greenwood*, 974 F.2d 1449, 1462-63 (5th Cir. 1992). "Under the plain error standard, we may reverse only if (1) there was error (2) that was clear and obvious and (3) that affected the defendant's substantial rights." *United States v. Ebron*, 683 F.3d 105, 135 (5th Cir. 2012) (quoting *United States v. Fuchs*, 467 F.3d 889, 901 (5th Cir. 2006)).

## II. Sufficiency of the Evidence

### A. Overtaking and Passing a School Bus

Winn was found guilty of overtaking and passing a school bus in violation of La. Rev. Stat. 32:80, which reads in relevant part:

---

[1] Winn filed additional exhibits with her appeal, including affidavits and photographs that were not introduced or considered by Magistrate Judge Kay. [Doc. No. 29]. Because this matter is a direct appeal of Winn's conviction, this Court may only consider exhibits introduced during the bench trial. [Doc. Nos. 13 and 14].

5

> A. (1) The driver of a vehicle upon a highway meeting or overtaking from any direction any school bus that has stopped for the purpose of receiving or discharging any school children shall stop the vehicle not less than thirty feet from the school bus before reaching such school bus when there are in operation on said school bus visual signals as required by R.S. 32:318, and said driver shall not proceed until such bus resumes motion or the visual signals are no longer activated.

La. Rev. Stat. 32:80(A)(1).

Winn argues that the prosecution did not provide sufficient evidence to prove that she failed to stop within 30 feet of the bus, or that she ever came within 30 feet of the school bus from her position on Kalina Street or when she drove over the vacant lot. [Doc. No. 29 at 11-12]. Section 32:80 states that a driver *shall stop* the vehicle not less than thirty feet from the school bus, and *shall not proceed* until the bus resumes or the signals are no longer activated. (emphasis added). Winn was not charged because she stopped her vehicle too closely to the bus while the bus signals were flashing. Winn was charged because when she encountered the bus she only momentarily stopped her vehicle before turning off the road to bypass the bus by driving through the adjacent grass lot. The question is not whether she drove her vehicle within 30 feet of the bus. The question is whether she stopped her vehicle and waited to proceed until the bus deactivated its warning signals or resumed its course down the street as the statute requires. There is sufficient evidence in the record to conclude that she clearly did not.

Alternatively, Winn argues that La. Rev. Stat. 32:80 requires that she was traveling "upon a highway" when she encountered the school bus, and that the Government failed to offer proof that Kalina Street is consistent with a "highway" as that term is defined by La. Rev. Stat. 32:1(25). [Doc. No. 29 at 12-13]. Section 32:1(25) defines a "highway" as "the entire width between the boundary lines of every way or place of whatever nature publicly maintained and open to the use of the public for the purpose of vehicular travel […]." Winn contends that because Kalina Street is not publicly maintained or open to the use of the general public because

of its location within the boundaries of Fort Polk that it is not a highway, which is required by the terms of the statute.

The Assimilated Crimes Act, 18 U.S.C. § 13, provides that where Congress has not made an offense punishable under federal law the laws of the state where a federal enclave is located are adopted within the federal jurisdiction. *See United States v. Hopkins*, No. 17-50439, 2018 WL 4042149 (5th Cir. Aug. 24, 2018). The purpose of the Act is to fill in gaps in federal criminal law. *Id.* Moreover, 32 C.F.R. § 634.25 provides that if a military installation is located in a state where traffic violations are criminal offenses, the state laws are made applicable to the military installation under the provisions of 18 U.S.C. § 13. It is clear that Fort Polk is in compliance with 32 C.F.R. § 634.25 because the citations issued to Winn all reference violations under Louisiana law. As such, La. Rev. Stat. 32:80(A)(1) is applicable to violations occurring on Fort Polk. If the Court were to construe the statute as suggested by Winn, all drivers on Fort Polk would be free to ignore school bus warning signs, and all other traffic regulations for that matter, simply because they are driving on a road within the boundaries of the military installation. This Court will not entertain such an interpretation.

Winn also argues that the Government failed to prove that she was driving "upon a highway" as required by the statute because she drove only on the grassy lot at all relevant times. [Doc. No. 29 at 16]. The Court does not agree with this conclusion. The evidence demonstrates that Winn was driving within the boundaries on Kalina Street when she encountered the bus. Winn testified that she saw the bus, stopped briefly, and then made the decision to drive onto the vacant lot. Winn's decision to drive her vehicle off the road after encountering the bus within the boundaries of Kalina Street does not render the statute inapplicable to her. Accordingly, the Court finds that substantial evidence supports Winn's conviction on this charge.

### B. Hit-and-Run

Winn was also found guilty of hit-and-run driving pursuant to La. Rev. Stat. 14:100, which states in relevant part as follows:

> A. Hit and run driving is the intentional failure of the driver of a vehicle involved in or causing any accident, to stop such vehicle at the scene of the accident, to give his identity, and to render reasonable aid.
>
> B. For the purpose of this Section:
> […]
> (4) "Accident" means an incident or event resulting in damage to property or injury to person.

La. Rev. Stat. 14:100.

Winn argues on appeal that she cannot be found guilty of hit-and-run driving pursuant to La. Rev. Stat. 14:100 because the statute requires either damage to property or injury to a person, which did not occur in this case. [Doc. No. 29 at 16-17]. The Court agrees with this conclusion.

Perez testified under oath that she was not injured. [Doc. No. 22 at 33]. She testified that she specifically used the term "graze" rather than "hit" when describing her contact with Winn's vehicle because she was not injured. *Id.* Perez did testify that she had dust on her uniform where Winn grazed her with her vehicle. *Id.* at 21. No testimony was elicited as to whether Perez considered her uniform to be damaged. La. Rev. Stat. 14:100 requires either an injury to a person or damage to property for an accident to occur. If there has been no accident, there cannot be a hit-and-run violation. While any reasonable, prudent, and responsible person would have stopped her vehicle to make sure Perez was not injured, without evidence of an injury or damage to property the elements of the charge cannot be established. *See e.g. State of Louisiana in the Interest of Korkosz*, 393 So.2d 332, 334-34 (La. App. 1 Cir. 1980) (for conviction of hit-and-run driving, failure to stop to render aid must be intentional, and thus driver must be aware that an accident occurred). Therefore, Winn's conviction on this charge must be reversed.

### C. Reckless Driving

Winn also appeals her conviction for reckless driving in violation of La. Rev. Stat. 14:99, which states in relevant part: "Reckless operation of a vehicle is the operation of any motor vehicle [...] in a criminally negligent or reckless manner." La. Rev. Stat. 14:99 (A). "Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances." La. Rev. Stat. 14:12.

Winn argues that her actions do not rise to the level of criminal negligence. [Doc. No. 29 at 19]. Winn also argues that inadvertently leaving the roadway only amounts to negligence, not criminal negligence. *Id.* Winn also notes that no people, animals, or cars were in the street or vacant lot, except for the pedestrians waiting for the bus to stop and the children to load. *Id.* at 20. Winn also claims that the prosecution failed to establish that she had the requisite criminal intent to recklessly disregard the safety of others. *Id.*

After hearing from all witnesses, Magistrate Judge Kay determined that on the morning in question Winn was obviously trying to avoid stopping her vehicle to allow the children to load onto the bus. [Doc. No. 22 at 114]. Magistrate Judge Kay also noted that as Winn returned down Kalina Street, she revved her engine at Perez before continuing to drive her vehicle towards Perez, who was standing in the road. *Id.* This Court agrees that the evidence in the record supports a conviction for reckless driving. Winn failed to stop for the school bus as noted above. She drove her vehicle across a vacant lot where children are known to frequent and play to avoid said school bus. Worse yet, she revved her engine at Perez and drove her vehicle so closely to Perez that contact of some sort was made. All are actions that are well below the standard of care expected of a reasonably careful individual under similar circumstances. This

9

Court is satisfied that the conviction for reckless driving is supported by sufficient evidence in the record.

## III. Assignment of Errors

### A. Introduction of Alleged Statements by Russell Winn

At the beginning of trial the Defendant's spouse, Russell Winn, took the stand and invoked his spousal privilege not to testify against his wife. [Doc. No. 22 at 7]. Thereafter, Perez testified that Mr. Winn apologized to her for his wife's behavior, explaining that she had been under stress at work. *Id.* at 25, 37. Defense counsel objected to the admission of any statement by Mr. Winn as hearsay and an attempt to circumvent the spousal privilege. *Id.* at 22-23. Magistrate Judge Kay overruled the objection.

There are two distinct privileges based on marriage. *See United States v. Miller*, 588 F.3d 897, 904 (5th Cir. 2009). The first permits a married witness to refuse to testify adversely against his or her spouse. *Id.* "The second bars one spouse from testifying as to the confidential marital communications between the spouses." *Id.* Neither privilege would preclude the introduction of Mr. Winn's out-of court statements made to a third-party witness if otherwise admissible under the hearsay rules. *See United States v. Archer*, 733 F.2d 354, 359 (5th Cir. 1984).

Winn argues that the admission of her husband's statement was in error because it does not fall within a proper hearsay exception. [Doc. No. 29 at 22]. Even if this Court were to find that Mr. Winn's statement should not have been admitted, the error in admitting the statement would be harmless in this case. "Unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *United States v. Mendoza-Medina*, 346 F.3d 121, 127 (5th Cir. 2003). The testimony of the witnesses in this case, including the Defendant, overwhelmingly supports Winn's conviction for overtaking the

school bus and reckless driving, such that the statement in question was inconsequential in the determination of the Defendant's guilt. Accordingly, this Court finds no reversible error in its admission.

Winn also challenges the admissibility of investigative Officer Niette's description of his conversation with her husband on the day in question. [Doc. No. 29 at 23]. Defendant objected to the testimony as hearsay, which was overruled. [Doc. No. 22 at 51]. When questioned, Officer Niette described Mr. Winn as follows: "it was like he was mad at us, basically." *Id.*[2] Officer Niette's description of Mr. Winn's demeanor based on his personal observation is not a "statement" offered for the truth thereof. Officer Niette merely described Mr. Winn's demeanor based on his personal observation. The admission of this testimony does not violate the hearsay rule or the spousal privilege. There is no reversible error due to its admission.

### B. Testimony of Officer Niette

Winn argues that Officer Niette's testimony should not have been introduced at all, because he lacked sufficient personal knowledge of the events in question. [Doc. No. 29 at 23-24]. Winn suggests that Officer Niette's testimony relied on a "regurgitation" of Perez's statement and the sworn statements of other witnesses. *Id.* at 24. Winn states that Officer Niette did not investigate the scene or conduct an investigation beyond taking statements from Perez and the other witnesses. Thus, Winn characterizes Officer Niette's testimony as "hearsay testimony." *Id.*

Winn's arguments are without merit. No objection was made at trial regarding Officer Niette's testimony or whether he had sufficient knowledge of the events in question. As such, this Court may only review for plain error. *See United States v. Acosta*, 475 F.3d 677, 680-81 (5th Cir. 2007) (plain-error exception to the contemporaneous-objection rule to be used solely

---

[2] Mr. Winn is also a military police officer. [Doc. No. 22 at 22-23].

when a miscarriage of justice would result). The record reflects that while investigating the incident Officer Niette met with Perez as well as others on the scene, including Joseph Miller, Amanda Marshall, and the bus driver. [Doc. No. 22 at 45, 53, 65-66 and 72]. All of the witnesses except the bus driver testified at trial and were subject to cross-examination. There is no evidence in the record suggesting that Officer Niette did not personally examine the scene of the alleged incident, and no objection was offered on this basis. Given the overwhelming testimony from the other witnesses, including the Defendant, the admission of Officer Niette's testimony did not result in a miscarriage of justice in this case.

Winn also argues that Officer Niette's opinion on the accident is inadmissible because he was not first qualified as an expert witness. [Doc. No. 29 at 24]. Again, the Court notes that there was no objection on this basis. However, even if an objection had been made it has been consistently held that a law enforcement officer may testify to matters within his personal knowledge acquired through experience without first being qualified as an expert. *See Iglinsky v. Player*, No. 08-0650, 2010 WL 4925000, at *3 (M.D. La. July 16, 2010). Officer Niette testified that he has worked for Fort Polk emergency services for 13 years, and the traffic section for four years. [Doc. No. 22 at 44-45]. Four years of experience in the traffic section is sufficient for Officer Niette to offer his opinion about a traffic related incident.

### C. Alleged Lack of Probable Cause to Support Arrest

Winn argues that Officer Niette lacked probable cause to arrest her. [Doc. No. 29 at 25-26].[3] This is an argument that should have been raised before trial if possible, or at trial. *See United States v. McGee*, 464 F.2d 542, 543 (5th Cir. 1972). Because the issue was not properly

---

[3] In support of this argument Winn invites the court to examine additional police video footage that was not admitted into evidence. This Court it limited to the record on appeal, and may only review exhibits admitted at trial. *See United States v. Alvarez*, 61 F. App'x. at 120.

raised below, this Court is limited to considering whether the alleged error rises to the level of a "plain" or "fundamental" error. *See id.*

The record does not demonstrate plain error. Rather, the record supports a finding of probable cause in this case. Probable cause exists when the totality of the circumstances known at the time of the arrest are sufficient to support a reasonable belief that the suspect has committed an offense. *See Haggerty v. Texas Southern Univ.*, 391 F.3d 653, 655-56 (5th Cir. 2004). As noted above, Officer Niette interviewed at least three witnesses from the scene as well as the bus driver before charging Winn with traffic violations. The witnesses described Winn driving her vehicle off the road and around the school bus, as well as towards Perez where sufficient contact was made to transfer vehicle dust onto Perez's uniform. This is more than sufficient evidence for Officer Niette to reasonably believe that Winn had committed the charged traffic offenses. There is no reversible error.

### D. Admission of Body Cam Footage

During the trial the Government discussed its intention to offer Officer Niette's body cam footage. [Doc. No. 22 at 41-42]. The Government contended that the footage contained a statement by Winn that was an admission to the charged conduct. *Id.* Defense counsel objected, arguing that Winn had invoked her right to counsel as soon as she arrived at the police station. *Id.* at 42. Magistrate Judge Kay noted that a motion to suppress should have been filed prior to trial. *Id.* Defense counsel stated that she had watched the video prior to trial, but did not see anything incriminating, and she did not file a motion to suppress. *Id.* A short recess was taken to allow defense counsel to review the video again and consider her objection thereto. *Id.* at 43.

When trial resumed, Officer Niette testified that he contacted Winn and asked her to come to the police station. *Id.* at 46. Officer Niette stated that when Winn arrived he informed her of the charges against her, at which point Winn invoked her right to counsel. *Id.* at 47.

Officer Niette stated that when she invoked her right to counsel he stopped questioning Winn, but she was upset and kept telling him that she was scared of the people who were standing in the road. *Id.* Officer Niette also stated that after Winn invoked her right to counsel she continued to ask him about procedural issues. *Id.* at 50.

The Government then offered a portion of Officer Niette's body cam footage. *Id.* at 48. The only portion admitted into evidence was a video file labeled TAI-012 from minute 21:00 to minute 25:00. *Id.* at 49; [Doc. No. 13]. Therein, Winn states that she knew what she did was wrong (i.e., driving off the road on the vacant lot) and she was ready to accept responsibility, but that she did not commit the additional charge (i.e., hit-and-run). [Doc. No. 13]. The video clip indicates that Winn voluntarily offered the statement in question, not in response to an inquiry by Officer Niette. Defense counsel stated "no objection" when the video clip was offered for admission. [Doc. No. 22 at 49].

On appeal, Winn points to her counsel's original objection and concern regarding her invocation of her right to counsel, and argues that the video should not have been admitted because she did not waive that right. [Doc. No. 29 at 28]. As noted above, defense counsel stated "no objection" when the Government offered the video clip. Therefore, this Court will only review the admission for plain error. *See United States v. Meza*, 701 F.3d 411, 423 (5th Cir. 2012).

Even if the court assumes that the admission of the video clip was in error, Winn's substantial rights were not violated by its admission. As noted above, Winn testified in great detail that she drove her car off the road and onto the vacant lot when she encountered the school bus, and that she revved her engine at Perez. Moreover, there is no indication that Magistrate Judge Kay relied on the video clip in reaching her decision. This Court finds no reversible error in its admission.

### E. Morgan Winn as Defense Witness

Winn argues that Magistrate Judge Kay committed an error by refusing to allow her minor daughter, Morgan Winn, to take the stand as a witness for her defense. [Doc. No. 29 at 29]. The record does not reflect that Magistrate Judge Kay refused to allow Morgan Winn to testify. The transcript reflects that defense counsel called Morgan Winn to the stand, which is followed by the notation "unintelligible conversation." [Doc. No. 22 at 74]. Defense counsel then stated "Morgan, thank you for coming today. I don't need you to testify. You can get down if the judge is finished." *Id.*

No objection was made to Magistrate Judge Kay's alleged refusal to allow Morgan Winn to testify. This Court may only consider what is properly in the record on appeal. As such, the transcript reflects that defense counsel made the decision not to proceed in questioning Morgan Winn. *Id.*

## IV. Ineffective Assistance of Counsel

Winn argues in this direct appeal of her conviction that she was denied effective assistance of counsel at trial, such that a reversal of her conviction is required. [Doc. No. 29 at 31]. Specifically, Winn alleges that her counsel failed to properly investigate the geography of the scene, failed to call her daughter to testify, failed to file a pretrial motion to suppress Officer Niette's body cam footage, and failed to recommend that her husband waive his spousal privilege so that he could testify on her behalf. *Id.* at 31-38.

Generally, an ineffective assistance of counsel claim cannot be addressed on direct appeal because the record lacks the necessary details to evaluate trial counsel's strategy and reasons behind his or her actions. *See United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992)). The record in this case does not contain information as to why defense counsel made certain strategic decisions. As such, the Court cannot review this issue on direct appeal.

## V. Request for New Trial

Winn concludes her appeal by suggesting that if the evidence is found to be sufficient to support her conviction, she should still be afforded a new trial. [Doc. No. 29 at 39]. Winn alleges that "consistent and cumulative errors severely prejudiced the fairness of her trial," such that she should be granted a new trial to adequately present her defenses. *Id.* As discussed above, no errors were committed that were sufficient to affect Winn's substantial rights. A new trial is not warranted.

## CONCLUSION

For the foregoing reasons, the Defendant's convictions for overtaking and passing a school bus (La. Rev. Stat. 32:80) and reckless operation of a vehicle (La. Rev. Stat. 14:99) are **AFFIRMED**. The Defendant's conviction of hit-and-run driving (La. Rev. Stat. 14:100) is **REVERSED**.

**THUS DONE AND SIGNED**, in Monroe, Louisiana, this 20th day of September, 2018.

*[signature: Robert G. James]*
ROBERT G. JAMES
UNITED STATES DISTRICT JUDGE